Pearson, J.
The prisoner, a slave, is convicted of murder in killing a white man. The case presents the question, whether the rules of laxv, by which manslaughter is distinguished from murder, as between white men, are applicable, when the party killing is a slave. If not, then to what'extent a difference is to be made ?
The general question is now presented directly, for the first time. In "Will's” case, the person killed was the overseer, who stood in the relation of master. In “ Jar-rott's” case, the general question was discussed, but the decision did not turn upon it.
These being the only two cases in this Court, where it was necessary to discuss the question, while it renders our duty the more difficult, cannot fail to striko every mind, as a convincing proof of the due subordination and good conduct of our slave population, and to suggest, that, *399 if any departure from the known and ordinary rules of the law of homicide|is to be made,'' it is called for to a very limited extent.
It is clear, that the killing of the deceased is neither a greater nor less offence, than would have been the killing of the witness, Brickhouse. He was the most forward and officious actor, but the deceased had identified himself with him. They set out upon a common purpose. When a' false word was told, in saying, “they were pat-rollers,” the deceased acquiesced by silence — when the slight blows were given with the board, the deceased gave countenance to it — "when Brickhouse seized Dick and began to beat him, the deceased caught hold of his hands and held him, while his coadjutor beat him.
To present the general question by itself, and prevent confusion, it will be well to ascertain, what would have been the offence, if all the parties had been white men ? Two friends are quietly talking together at night — two strangers come up — one strikes each of the friends several blows with a board ; the blows are slight, but calculated to irritate — a third friend comes up — one of the strangers seizes him, and orders one of the former to go and get a whip that he might whip him. Upon his refusing thus to become an aider in their unlawful act, the two strangers set upon him — one holds his hands, while the other beats, h™ with his fist upon the head and breast, he not venturing to make resistance and begging for mercy — • his friend yielding to a burst of generous indignation, exclaims, “I can’t stand this,” takes up a fence rail, knocks one down, and then knocks the other down, and without a repetition of the blow, the three friends make their escape. The blow given to one proves fatal. Is not the bare statement sufficient ? Does it require argument, or a' reference to adjudged cases to show, that this is not a case of murder? or, “of a black,” diabolical heart, regard *400 less of social duty and fatally bent on mischief? It is clearly a case of manslaughter in its most mitigated form. The provocation was grie vous. The blow was inflicted with the first thing that could be laid hold of: it was not repeated and must be attributed, not to malice, but to a generous impulse, excited by witnessing injury done to a friend. The adjudged cases fully sustain this conclusion. In 12 Coke. Rep. 87, “two are playing at bowls; they quarrel and engage in a fight: a friend of one, standing by, seizes a bowl and strikes a blow, whereof the man dies. This is manslaughter,because of the passion, which is excited, when one sees his friend assaulted.” This is the leading case ; it is referred to and approved by all the subsequent authorities. King v. Huygot, 1 Kel. 59. 1 Russ. on crimes, 500. 1 East. P. C. 328, 340.
As this would have been a case of manslaughter, if the parties had been white men ; are the same rules applicable, the party killing being a slave? The lawmaking power has not expressed its will, .but has'left the law to be declared by the “Courts, as it may be deduced from the primary principles of the doctrine of homicide.” The task is no easy one, yet it is the duty of the Court to ascertain and declare what the law is.
I think the same rules are not applicable ; for, from the nature of the institution of slavery, a provocation, which, given by one white man to another, would excite the passions, and “dethrone reason for a time,” would not and ought not to produce this effect, when given by a white man to a slave. Hence, although, if a white man, receiving a slight blow, kills with a deadly weapon, it is but manslaughter; if a slave, for such a blow, should kill -a white man, it would be murder; for, accustomed as he is to constant humiliation, it would not be calculated to ,excite to such a degree as to “dethrone reason,” and must be ascribed to a “wicked heart, regardless of social duty.”
*401 That such is the law is not only to be deduced, as above, from primary principles, but is a necessary consequence of the doctrine laid down in Tacket’s case, 1 Hawks. 217. “Words of reproach, used by a slave to á white man, may amount to a legal provocation, and extenuate a killing from murder to manslaughter.”
The reason of this decision is, that, from our habits of association and modes of feeling, insolent words from a slave are as apt to provoke passion, as blows from a white man. The same reasoning, by which it is held', that the ordinary rules are not applicable to the case of a white man, who kills a slave, leads to the conclusion, that they are no.t applicable to the case of a slave, who kills a white man.
The announcement of this proposition, now directly made for the first time, may have somewhat the appearance of a law, made after the fact. It Is, however* not a new law, but merely a new application of a well settled principle of the common law. The analogy hold's in the other relations of life — parent and child, tutor and pupil, master and apprentice, master and slave. A blow, given to the child, pupil, apprentice, or slave, is less apt to excite passion, than when the parties are two white men “free and equalhence, a blow, given to persons, filling these relations, is not, under ordinary circumstances, a legal provocation. So, a blow, given by a white man to a slave, is not, under ordinary circumstances, a legal provocation, because it is less apt to excite passion, than between equals. The analogy fails only in this : in the cases above put, the law allows of the infliction of blows. A master is not indictable for a battery upon his slave; a parent, tutor, master of an apprentice, is not indictable, except there be an excess of force; whereas the law does not allow a white man to inflict blows upon a slave, who is not his property — he is liable to indictment for so doing. In other words, in this last case, the blow is not *402 a legal provocation, although the party, giving it, is liable to indictment; while in the other cases, whenever the blow subjects one party to an indictment, it is a legal provocation for the other party. This is a departure from the legal analogy, to the prejudice of the slave. It is supposed, a regard to due subordination makes it necessary, but the application of the new principle, by which this departure is justified, should, I think, be made with great caution, because it adds to the list of constructive murders, or murders by “malice implied.”
Assuming that there is a difference, to what extent is the difference to be carried ? In prosecuting this en-quiry, it should be borne in mind, that the reason of the difference is, that a blow inflicted upon a white man carries with it a feeling of degradation, as well as bodily pain, and a sense of injustice ; all, or either of which are calculated to excite passion: whereas, a blow inflicted Upon a slave is not attended with any feeling of degradation, by reason of his lowly condition, and is onty calculated to excite passion from bodily pain and a sense of wrong ; for, in the language cf Chief Justice Taylor, in Hale’s case, 2 Hawks, 582, “the instinct of a slave maybe, and generally is, turned into subserviency to his master’s will,'and from him he receives chastisement, whether it be merited or not, with perfect submission, for, he knows the extent of the dominion assumed over him, and the law ratifies the claim. But when the same authority is wantonly usurped by a stranger, nature is disposed to assert hep rights, and prompt the slave to resistance.”
We have seen, that the general rule is, that whenever force is used upon the person of another, under circumstances amounting to an indictable offence, such force is a legal provocation ; otherwise, it is not.
By this rule, “Will’s case,” 1 Dev. & Bat. 121, would have been a.case of murder ; for, it was settled in “Man’s case,” 2 Dev. 263, that a master is not indictable for a *403 batter}' upon his own slave, however severe or unreasonable. But Will was held guilty of manslaughter only, the Court feeling itself constrained to make some allowance for the feelings of nature.' By this rule, if a slave, who has been guilty of insolence, receives a blow from a white man, it is a legal provocation ; for the white man has committed an indictable offence. Hale’s case, 2 Hawks. 582. This case would be as strong an authority to show, that the case above put was but manslaughter, except for reasons of policy and the necessity of keeping up due subordination, as “Man’s” case was to show, that “ Will’s” case was a case of murder, except for an allowance for the feelings of nature.
In the case above put. a blow is supposed, unaccompanied by bodily pain or unusual circumstances of oppression, the only incentive to passion being a sense of degradation, which a slave is not allowed to feel. When bodily pain or unusual circumstances of oppression occur, one or both is sufficient to account for passion, putting a sense of degradation out of the question, and there would be legal provocation.
I think it clearly deducible from Hale’s case, and analogies of the common law, that, if a white man wantonly inflicts upon a slave, over whom he has ho authority, a severe blow, or repeated blows uifder unusual circumstances, and the slave at the instant strikes and kills, without evincing, by the means used, great wickedness or cruelty, he is only guilty of manslaughter, giving due weight to motives of policy and the necessity for subordination.
This latter consideration, perhaps, requires the killing should be at the instant; for, it may not be consistent with due subordination to allow a slave, after he is extricated from his difficulty and is no longer receiving blows or in danger, to return and seek a combat. A wild beast .wounded or in danger will turn upon a man, but he sel *404 dom so far forgets his sense of inferiority as to seek a combat. Upon this principle, which man has in common with the beast, a slave may, without losing sight of his inferiority, strike a white man, when in danger or suffer, ing wrong; but he will not seek a combat after he is extricated.
If the witness, Dick, while one white man was holding his hands, and the other -was beating him,, had killed either of them, there would have been no difficulty in making the application of the above principles, and deciding, that the killing was but manslaughter, and of a mitigated grade, contrasted with Will’s case, who, although he did not seek the combat, but was trying to escape, killed his owner with a knife, after being guilty of wilful disobedience ; and the conclusion would derive comfirmation from the reasoning of Judge Gaston, in Jarrolt’s case, where the prisoner had it in his power to avoid the combat, if he would, and struck several blows, after the white man was prostrated.
In making the application of the principles before stated to the case of the prisoner, another principle is involved. The prisoner was not engaged in the fight — he was the associate and friend of Dick, and was present and a witness to his wrongs and suffering.
We have seen, that had he been a white man, his of-fence would have been but manslaughter; “because of the passion, which is excited, when one sees his friend assaulted.” (See the case cited from Coke’s Rep’Is and the other authorities.) But he is a slave, and the question is, does that benignant principle of the law, by which allowance is made for the infirmity of our nature, prompting a parent, brother, kinsman, friend, or even a stranger to interfere in a fight and kill, and by which it is held, that, under such circumstances, the killing is ascribed to passion and not to malice, and is manslaughter, not murder ; does this principle apply to a slave ? or is he com *405 manded, under pain of death, not to yield to these feelings and impulses of human nature, under any circumstances ? I think the principle does apply, and am not willing, by excluding it from the case of slaves, to extend the doctrine of constructive murder beyond the limits, now given to it by well settled principles. The application of this principle will, of course, be restrained and qualified to the same extent and for the same reasons, as the application of the principle of legal provocation, before explained. A slight blow will not extenuate; but, if a white man wantonly inflicts upon a slave, over whom he has no authority, a severe blow, or repeated blows under unusual circumstances, and another, yielding to the impulse, natural to the relations above referred to, strikes at the instant and kills, without evincing, by the means used, great wickedness or cruelty, the offence is extenuated to manslaughter.
In 1 East. P. C. 292; and in 1 Russel on crimes, 502, it is said, “after all, the nearer or more remote connection of the parties with each other, seems snore a matter of observation to the jury, as to the probable force of the provocation, and the motive, which induced the interference of a third person, than as furnishing any precise rule of law, grounded on such a distinction.”
The prisoner was the associate or friend of Dick — his .general character was shown to be that of an- obedient slave, submissive to white men — he had himself received several slight blows, without offence on his part, to which he quietly submitted — he was present from the beginning —saw the wanton injury and suffering inflicted upon his helpless, unoffending and unresisting associate — he must either run away and leave him at the mercy of two drunken ruffians, to suffer, he.knew not how much, from their fury and disappointed lust — the hour of the night forbade the hope of aid from white men — or he muf t yield to a generous impulse and come to the rescue. He used force *406 enough to release his associate and they made their escape, wilhout a repetition of the blow. Does this show he has the heart of a murderer ? On the contrary, are we not forced, in spite of stern policy, to admire, even in a slave, the generosity, which incurs danger to save a friend? The law requires a slave to tame down his feelings to suit his lowly condition, but it would be savage, to allow him, under no circumstances, to yield to a generous impulse.
I think his Honor erred in charging the jury, that, under the circumstances, the prisoner was guilty of murder» and that there was no legal provocation. For this error the prisoner is entitled to a new trial. He cannot, in my opinion.beconvicted of murder, without overruling Hale's case and Will’s case. It should be borne in mind, that in laying down rules upon this subject, they must apply to white men .as a class, and not as individuals ; must be suited to the most degraded, as well as the most orderly. Hence great caution is required to protect slave property from wanton outrages, while, at the same time, due subordination is preserved.
It should also be borne in mind, that a conviction of manslaughter is far from being an acquittal ; it extenuates on account of human infirmity, but does not justify or excuse. Manslaughter is felony. For the second of-fence life is forfeited.
I think there ought to be a new trial.